IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN H. HARRIS, JR. and ALICIA HARRIS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.  2:10cv676-WHA |
| ) | |
| CITY OF MONTGOMERY, ) | (wo) |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment filed by the Defendant, the City of Montgomery (Doc. #34).

The Plaintiffs originally filed a Complaint in this case against the City of Montgomery and four John Doe Defendants on August 9, 2010.  On May 16, 2011, the Plaintiffs filed a First Amended Complaint, naming as Defendants the City of Montgomery, and Officers D.T. Bogan, J.M. Douglas, J.M. Smith, and E.S. Pinkett, in their official and individual capacities.

In the Amended Complaint, John Harris brings 42 U.S.C. § 1983 claims for violation of the fourth, sixth, eighth, and fourteenth amendments (Count I), Alicia Harris brings 42 U.S.C. § 1983 claims for violation of the fourth, sixth, eighth, and fourteenth amendments (Count II), John Harris brings state law claims of assault, trespass to person, intentional infliction of emotional distress and malicious prosecution (Count III), and Alicia Harris bring state law claims of assault, battery, trespass to person, intentional infliction of emotional distress, false arrest, and false imprisonment (Count IV).

The City of Montgomery moved to strike the Amended Complaint as untimely. On May 26, 2011, the court denied that motion, and granted the Plaintiffs' motion for leave to file an amended complaint. (Doc. #21).

On June 20, 2012, the Plaintiffs moved to reset the dispositive motion deadline set forth in the Uniform Scheduling Order, and other deadlines, on the ground that they were in the process of serving the additional four individual defendants. The court granted that motion, as well as a motion to amend the scheduling order. (Doc. #24, #27). There is no indication in the file of this case that the individuals named as Defendants in the Amended Complaint were ever served.

On March 19, 2012, the court entered an Order, noting that the City of Montgomery had stated in its Motion for Summary Judgment that it was the only party in the case, because the individual defendants had never been served; that the Plaintiffs had not responded to that contention; and dismissing the case without prejudice as to D.T. Bogan, J.M. Douglas, J.M. Smith, and E.S. Pinkett for failure to serve those individuals within 120 days of the filing of the Amended Complaint, pursuant to Fed. R. Civ. Pro. 4(m). *See* Doc. #39.

For the reasons to be discussed, the Motion for Summary Judgment by the City of Montgomery is due to be GRANTED.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III.  FACTS

The facts taken in a light most favorable to the nonmovants are as follows:

On August 10, 2008, John Harris and his wife Alicia Harris were traveling in a vehicle which was stopped by Montgomery police officers.  The driver, John Harris, was directed by Officer J.M. Douglas ("Douglas") to exit the vehicle and did so.  John Harris states that he made no physical threat toward any officer.  Four officers were present at the scene.  John Harris states in an affidavit that a taser gun was used on him twice, and he was pepper sprayed in the face by the officers.   He states that he was charged with, but ultimately acquitted of, disorderly conduct.

Alicia Harris states in an affidavit that she was removed from the car by Officer J.M. Smith and handcuffed and shackled.  She states that she was placed in a police car from which she observed the officers' treatment of her husband, John Harris.  She states that she observed the officers use a taser on her husband, hit her husband, use the taser a second time, and then use pepper spray on her husband.  She states that after she observed this conduct, the officers released her from the police car, removed the handcuffs and shackles, and did not bring any criminal charges against her.

### IV. DISCUSSION

The City of Montgomery ("the City") has moved for summary judgment as to the federal and state claims of John and Alicia Harris (collectively "the Harrises").  The court begins with the federal claims, and then will turn to the state law claims.

#### A.  Federal Claims

##### 1.  Sixth and Eighth Amendment Claims

The City states that the Harrises have not suffered a violation of their Sixth and Eighth

Amendment rights because the Sixth and Eighth Amendment guarantees are not implicated in this case. The Harrises do not respond to these arguments, nor refer to their Sixth or Eighth Amendment claims in any way in responding to the Motion for Summary Judgment. "[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, summary judgment is due to be GRANTED as to the Sixth and Eighth Amendment claims of the Harrises.

### 2. Fourth and Fourteenth Amendment Claims

The City argues that the Harrises have not established Fourth and Fourteenth Amendment violations, and that even if they had established such violations, they have not shown that any violations were pursuant to a policy or custom of the City of Montgomery.

The Supreme Court has placed strict limitations on municipal liability under section 1983. *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). There is no respondeat superior liability of a municipality for the wrongful actions of its police officers. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978). To impose § 1983 liability on a municipality, a plaintiff must show the following: (1) that his constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to those rights, and (3) that the custom or policy caused the violation. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

A "policy" is "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (quoting *Monell v. N.Y.*

*City Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978)).  A custom "is a practice that is so settled and permanent that it takes on the force of law." *McDowell*, 392 F.3d at 1290.  A single act of a municipal officer subjects the municipality to liability under section 1983 if it is an (1) act which the municipality officially sanctioned or ordered, (2) act of municipal officers with final policy-making authority as defined by state law, or (3) action taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area. *Manor Healthcare Corp. v. Lomelo,*  929 F.2d 633, 637 (11th Cir. 1991).

The Harrises argue that the City's actions constituted excessive force in violation of the Fourth and Fourteenth Amendments, and that the force taken was pursuant to an official City of Montgomery policy.  The Plaintiffs do not attempt to demonstrate a pattern of conduct, or rely on a decision by a policy making official, but instead seek to rely on an email which they contend constitutes a formal policy of the City.

The evidence pointed to by the Plaintiffs is contained within an email which states as follows:

> 2.180 Duty in the Use of Force:
> A member may use the amount of force that is objectively reasonable, considering the totality of the circumstances, to affect an arrest or otherwise accomplish as assigned task lawfully. Each member is specifically charged with knowing and remaining competent in the law of the State with regards to when and how force may be used.
> Force that an officer uses to gain control over a subject is divided into the following categories:
> Verbal Direction
> Empty Hand Control
> Intermediate Weapons ( Oleoresin Capsicum Aerosol Restraint, Taser, Baton )
> Lethal Force

Plaintiffs' Exhibit 6.  The Plaintiffs argue that this policy allows officers to use repetitive use of

intermediate force once that level of force has been used, even after a person has succumbed to the force.

The City responds that the evidence pointed to by the Harrises is not the City's policy on excessive force. The City states that it produced to the Plaintiffs multiple discs of training materials used by the City of Montgomery in its excessive force policy, including the use of TASER devices and mace or pepper spray devices, but was never asked to produce its excessive force policy. The City has stated, therefore, that the Harrises cannot establish a policy or custom of the City.

In response, the only evidence presented by the Harrises of any policy of the City is a statement contained within the email, quoted above, which directs the use of lawful, objectively reasonable force, and charges the users of force with knowledge of when and how force may be used under the law. Assuming that the evidence presented is evidence of a policy of the City, it does not condone or promote excessive use of force. *See Ludaway v. City of Jacksonville, Fla.,* 245 Fed. Appx. 949, 951 (11th Cir. 2007) (noting that an official policy which prohibits the use of excessive force by officers does not condone or promote the use of excessive force). Therefore, the Harrises have failed to establish municipal liability through a formal City policy of authorizing excessive force.

The Harrises have also argued that the cited policy is at fault because the language does not preclude the conduct at issue in this case. The mere argument that the policy was not adequate to preclude officers from using excessive force in this case is not sufficient to establish municipal liability, however, without sufficient evidence of prior abuse under the policy. *See City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989) (stating that there is no policymaker

liability when a subordinate applies a facially valid constitutional policy in an unconstitutional manner in the absence of evidence of a failure to train which amounts to deliberate indifference); *see also Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir.1990) (stating that the need for training is not plainly obvious unless there is "evidence of a history of widespread prior abuse.").

The only evidence of prior actions by officers in this case presented by the Harrises is their contention J.M. Smith, who handcuffed Alicia Harris and detained her in a law enforcement vehicle, has been cited for public relations issues in the past, and has a pattern of discipline issues in showing disrespect for citizens. To support this contention, the Harrises provide the court with a letter of reprimand for Officer J.M. Gola for rude behavior during a telephone call, and a charge of conduct unbecoming an officer as to J.M. Gola for use of profanity during a detention of a citizen by other officers. *See* Plaintiffs' Exhibits 4, 5.

The City has moved to strike the Harrises's evidence as unauthenticated. The Harrises respond that the records were produced by the City in response to discovery requests. Even considering the evidence regarding J.M. Gola, the evidence does not establish deliberate indifference on the part of the City to abuses by officers. First, there is no evidence which indicates that the officer discussed in the reprimand or charge, J.M. Gola, was involved in this case. Second, even if the court assumes that "J.M. Gola" is a different name for one of the officers who is involved in this case, presumably J.M. Smith, the evidence states only that J.M. Gola was suspended for the use of profanity toward a person detained by other officers, and reprimanded for rude treatment over the phone of a member of the public. This evidence does not refer in any way to any use of excessive force, or any improper restraint or detention by any officer, including J.M. Smith. Therefore, this evidence is not sufficient to establish any policy or

custom of the City with respect to the detention of Alicia Harris, *McDowell*, 392 F.3d at 1290, or to establish deliberate indifference to abuses under the written excessive force policy cited by the Harrises. *See also Williams v. City of Dayton Beach*, No. 6:04cv1879-ORL-19, 2006 WL 354635, at *19 (M.D. Fla. Feb. 15, 2006) (stating "While several exhibits detail alleged rude, aggressive, or unprofessional behavior by the officers or demonstrate a lack of judgment, none of these exhibits, even in combination with the exhibits that examine the use of force in an arrest context, demonstrate that the City had a pattern or practice of condoning excessive use of force.").

Because the Harrises have not met their burden of establishing a municipal policy or custom of the City of Montgomery, even assuming without deciding that there were violations of the Harrises's Fourth and Fourteenth Amendment constitutional rights by officers, the City's Motion for Summary Judgment is due to be GRANTED as to those claims. *See Brown v. City of Tybee Island, Ga.*, No. 408-232, 2010 WL 1169735, at *3 (S.D. Ga. March 24, 2010) (granting summary judgment where defendant met its *Celotex* burden by stating plaintiff did not put forward evidence of a failure to train or unwritten custom, and plaintiff failed to present evidence of a pervasive custom or knowledge of a need to train).

B.  State Claims

The Harrises have brought state law claims of assault, trespass to person, outrage, malicious prosecution, false arrest, and false imprisonment. The City argues that because all of the Plaintiffs' state law claims are intentional torts, the City cannot be held liable. The City also states that the Harrises have failed to file a claim as required by state law, and only filed an

internal affairs complaint.  The Harrises respond that they did file the appropriate claim with the City, but do not respond to the contention that their claims are intentional torts and therefore barred under state law.  The Harrises apparently concede that their state law claims are intentional torts, stating in the Amended Complaint that "Defendant City of Montgomery is liable via respondeat superior for intentional torts alleged . . . ."  Amended Complaint at ¶¶ 31, 35.

Alabama law provides that "[n]o city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality . . . ."*Ala. Code* § 11–47–190 (1994).  Under state law, therefore, a municipality cannot be held liable for intentional torts.  Therefore, the Harrises's state law claims are barred.  *See Walker v. City of Huntsville*  62 So. 3d 474, 501 (Ala. 2010) (malicious prosecution and tort of outrage claims arising from prosecution of plaintiff are barred by *Ala. Code* § 11-47-190)); *Beech v. City of Mobile*, 874 F. Supp. 1305, 1314 (S.D. Ala. 1994)(assault and battery claim barred); *Rose v. Town of Jackson's Gap*, 952 F. Supp. 757, 767 (M.D. Ala.1996)(false arrest and false imprisonment claims barred where there is no allegation of negligence); *see also Ala. Code* § 6-2-34 (identifying false imprisonment and assault and battery as trespass to person claims).   Therefore, summary judgment is due to be GRANTED as to the Harrises's state law claims.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Defendant's Motion to Strike (Doc. #40) is DENIED as moot.

2. The Defendant's Motion for Summary Judgment (Doc. #34) is GRANTED.

A Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this  6th day of April 2012.

                                       /s/ W. Harold Albritton_____
                                       W.  HAROLD ALBRITTON
                                       SENIOR UNITED STATES DISTRICT JUDGE